Sosman, J.
Plaintiff has brought the present action complaining of injuries sustained when she, as an infant, came in contact with a radiator in her family’s apartment. Plaintiff seeks damages against the landlord, alleging that the landlord was negligent in failing to guard or cover the radiator and failing to warn plaintiff or plaintiffs parents of the dangers of a radiator.
Defendant has moved for summary judgment on the ground that he is not negligent, as there is no negligence in not covering a properly functioning radiator and no duty to warn of the open and obvious danger that a radiator poses to an infant. For the following reasons, defendant’s motion for summary judgement is ALLOWED.
" FACTS
In January 1989, plaintiffs parents leased from defendant Long an apartment located at 136 Branch Street in Lowell. Long, as trustee of the Coral Street Really Trust, owns and manages the building in question.
Plaintiff Elizabeth Chanthavong was born in the summer of 1990. The landlord and/or agents of the landlord had been to the apartment on various occasions during the summer and fall of 1990 and were aware that an infant was living there.
On December 22, 1990, plaintiff was in the apartment with her father and one of her older siblings. As of that date, plaintiff was approximately five months old. Her father had placed her in the bedroom asleep, in the middle of the bed, and had taken the other child into the bathroom to bathe her. When he returned to the bedroom some twenty to twenly-five minutes later, he found Elizabeth face down on the radiator. Elizabeth was severely burned as a result of this accident.
The heating system for the building is a gas-fired forced hot water system. The furnace had been replaced in November 1989, a year prior to plaintiffs accident. The radiator in question was a standard, cast iron stand-up model located in the middle of the outside wall of the bedroom. The room itself was approximately 15 feet by 11 feet. There is a thermostat in the room, which the landlord has set at 70 degrees. There is a permanent lock box over the individual thermostats in the apartment, thus preventing tenants from adjusting the heat. The landlord had instructed plaintiffs parents not to attempt any adjustment to the thermostat.
DISCUSSION
Plaintiff does not contend, and has provided no evidence of, any malfunction in the heating system or radiator itself. Plaintiffs claim of negligence is based on a theory that it was negligent not to have some sort *419 of guard or cover on the radiator. Plaintiff also claims that there was a breach of a duty to warn.
At the outset, the court notes that it is inherent in the function of a radiator for it to become hot and to radiate that heat into a room. Doing something to a radiator that either prevents it from getting hot or prevents the transmission of heat from the radiator into the surrounding area would totally defeat the purpose of having a radiator. In the present case, there is no evidence that this radiator was doing anything other than what it was designed to do — ie„ radiate heat during a winter day to try and maintain the room at the preset temperature of 70 degrees.[1]
In support of her claim that it is negligent not to put a guard or cover on a residential radiator, plaintiff attempts to read such a requirement into the State Sanitary Code. Violation of a safely regulation would be some evidence of negligence. However, there is nothing in the State Sanitary Code that requires an owner to put any form of guard or cover on a radiator. Plaintiffs Sanitary Code argument is based on the circuitous reasoning that since the Code generally prohibits hazardous conditions, an unguarded radiator is a violation because it is hazardous.
Plaintiff relies on 105 C M.R. 410.750, entitled “Conditions Deemed to Endanger or Impair Health or Safety.” The section contains a lengthy list of conditions that will be deemed dangerous for purposes of Code enforcement. Within that list is the following:
Failure to install electrical, plumbing, heating and gasburning facilities in accordance with accepted plumbing, heating, gasfitting and electrical wiring standards or failure to maintain such facilities as are required by 105 CMR410.351 and 410.352, so as to expose the occupant or anyone else to fire, burns, shock, accident or other danger or impairment to health or safeiy.
Plaintiff would read this provision to mean that anything that causes burns violates the Code. That is not what the provision says. If occupants are exposed to burns as a result of either failure to install the system in accordance with accepted standards, or failure to maintain the system as required by §410.351 (Owner’s Installation and Maintenance Responsibilities) or §410.352 (Occupant’s Installation and Maintenance Responsibilities), then there is a violation.
Plaintiff has pointed to no industry or other standard requiring guards or covers to be put on ordinary residential radiators. Indeed, the court could virtually take judicial notice of the fact that most radiators in homes and apartments do not have any guard or cover over them.
Nor is any such requirement part of an owner’s maintenance obligation under 105 CMR §410.351 That section, in its entirety, provides as follows:
The owner shall install in accordance with accepted plumbing, gasfitting and electrical wiring standards, and shall maintain free from leaks, obstructions or other defects, the following:
(A) all sinks, washbasins, bathtubs, showers, toilets, waterheating facilities, gas pipes, heating equipment, water pipes, owner installed stoves and refrigerators, catch basins, drains, vents and other similar supplied fixtures; the connections to water sewer and gas lines; the subsurface sewage disposal system, if any; all electrical fixtures, outlets and wiring, and all heating and ventilating equipment and appurtenances thereto; and
(B) all owner-installed optional equipment, including but not limited to, refrigerators, dishwashers, clothes washing machines and dryers, and garbage grinders.
Again, under this section, the owner must install the system in accordance with “accepted” standards. No deviation from accepted standards has been shown with respect to the radiator or heating system at issue in this case. The section goes on to require that the system be maintained free from “leaks, obstructions or other defects.” Nothing in that obligation to maintain the system makes any reference to placing a guard or cover on radiators.
In other regulations of the Department of Public Health pertaining to long-term care facilities, there is a requirement that “(h]eating fixtures and all exposed pipes in patient areas shall be shielded for the safety of patients or residents.” 105 C.M.R. 150.017(B)(13). When the Department of Public Health intends that heating fixtures be shielded, it obviously knows how to say so expressly. The same Department’s decision not to put such an express requirement into the State Sanitary Code is a further indication that the court should not read in such a requirement.
Plaintiffs alternative theory of breach of a duty to warn requires little discussion. Obviously no effective warning can be given to a five month old infant. As to warning plaintiffs parents, there is no duty to warn of an open and obvious risk. That radiators get hot during the winter heating season, and that direct contact between a hot radiator pipe and the tender skin of a baby is likely to injure the baby, is not something that parents need to be told by their landlords.[2] It was not the father’s ignorance of what radiators do that caused this accident, but rather his underestimation of his infant daughter’s mobility. That underestimation has unfortunately led to serious injury, but it can not be attributed to any breach of a landlord’s duty to warn.
ORDER
For the foregoing reasons, defendant’s motion for summary judgment is ALLOWED and it is hereby ORDERED that judgment be entered in favor of defendant.

Plaintiff repeatedly points out that the thermostat was locked, and thus not within the control of plaintiffs parents. *420 That thermostat was set at 70 degrees, and a landlord’s decision not to allow tenants to adjust that setting is not negligence. The obvious purpose of such a permanent setting is to prevent tenants from turning the thermostat to a higher temperature (and thus increasing the landlord’s heating expense). There is nothing negligent about putting a thermostat at 70 degrees, and plaintiff has not shown any connection between the landlord having fixed the thermostat at that setting and the injury to plaintiff.

Plaintiff suggests that since the parents were immigrants, they needed to be told how this particular object worked. There is no indication on this record that plaintiffs parents were in any way ignorant as to the purpose and function of radiators, and no such ignorance could be inferred from the mere fact that someone was not born in this country. In fact, plaintiffs parents had been living in this particular apartment since January 1989, and thus lived in that apartment through both the winter and fall of 1989 and the winter and fall of 1990 prior to this December 22, 1990 accident. Whatever their prior experience with radiators and heaters, a landlord could reasonably expect that by December 1990 these tenants knew what that radiator was for and what it did.